That is Hamburger v. Northland Good afternoon, your honors. I may please report Richard Purr on behalf of the appellant and defendant, the Northland Group. I respectfully request to reserve two minutes for rebuttal. This is a unique factual situation that is being brought before the court. Where did you come up with $75,000? And was there any suggestion that the judge came to this number rather than just picking it? As the court is aware, Rule 54D requires in two parts if you're requesting fees, both in the rule to establish and put forth your entire basis for the fees, but then that's in subsection 2 and subsection 3 goes on to say, however, the court can instead determine liability before it goes through an entire adjudication on a fee award. But that doesn't answer the question. No, but I'm saying that because of that, to comply with both parts of the rule, in the moving papers for sanctions, the indication was the fees that had been accrued to date in the case. So that's it, you're $75,000 in fees. Did they break this down or did they just say we want $75,000? It didn't say we want. It said that accrued to date in an effort to comply with both 5014, both a suggestion of what could be coming down the road if the court found, for example, that the entire action is brought in bad faith, that that would be the amount that would be put before the court for recoupment of fees that had been through trial up until that date. And that's where we get to what is the error in this case, which is that the trial court found sanctionable conduct. And we're not here looking to overturn any of the factual findings of the court. It was clear, clearly established fraud, the court says. You're looking to get paid, I get that. And where did the $75,000 come from, fees? It was the fees and costs accrued through trial, yes. The district court finds sanctionable conduct. Is the district court obligated to then sanction it? Yes. And that is what this court. So it's like night follows day. If a district judge makes a finding that sanctionable conduct occurred, it's an error of law to then not sanction it. Yes, Your Honor. What nature of misconduct? Well, the court then has to hold a hearing. We have to evaluate the request for sanctions, the damages. Well, that's different because the court doesn't need a hearing. The court knows what the nature of the misconduct is. The court here found fraud, so it knows the nature of the misconduct. So what would the hearing look like? What would be the purpose of the hearing? Well, in this case, the request that was being made was to award fees and costs to the defendant. The court would then take a fully briefed fee petition, including all of the amounts and elements that would be consistent with this court's holdings and others on fees and costs. The court would then take it, determine reasonableness in certain cases, which portion of the fees and costs would be warranted. And after hearing from both sides. So you're saying as a matter of law, the answer to that cannot be zero. A district judge cannot say there is sanctionable conduct. I'm not going to sanction it for these three reasons. Yes, Your Honor. Once the finding is that there is sanctionable conduct, it has to go to the next step. Well, the judge in this case, and I'm reading from his opinion, page 16, said, therefore, we are faced with clearly established fraud that had no actual effect on the proceedings. It was very limited in scope. So didn't he go through that matrix, at least in his own mind, and say, hey, there was fraud here? And your opinion, written about you saying you committed fraud in federal court, could be construed as a sanction. But there's no monetary value. And this is where the court made its error. And this is the point that we point out in our papers. The court made two conclusions. One, it said, as a matter of fact, the suggestion of the amount that is in question is on its face. We can't award $75,000. The remedy for that would have been not for the court to say we can't award $75,000. It would have been to take a look at all the paperwork, see what fees are submitted, and then make a conclusion as to how much. The court is not obligated. It's not baseball arbitration to take simply $0 or $75,000. The court says there was no actual effect on the proceedings. He found that. And also said it was very limited in scope, which would suggest that, therefore, I'm not going to impose sanctions. And that is the second area where there is error, as we point out in our papers. The court has two things that it can do. And one, both the cases that we have cited that have indicated that there's not just a fraud on the opposing party, but a fraud on the court for engaging in this type of conduct, the lies, the creation of evidence. So the court should instruct the district judge, you have to do something about this. It is not within your judicial discretion to make the finding of fraud, make a finding of no prejudice, and then do nothing. As a matter of law, the Court of Appeals should tell the district judge, you have to sanction them. Yes, Your Honor, and that's exactly what this court did in the In Re Gio Ioso case, in which there was findings of, in that case, it was fabricated certification. The court went back and said, basically, almost identical. It was a fabricated certification. There was no harm. It came up to the Third Circuit. Third Circuit said, you're obligated to enter sanctions. Send it back down for a proceeding consistent with that opinion. It has happened before. And that's exactly what the situation we have here. There's also a case called Perchak, which no one cited, the clerks dug out, where we talked there in terms of bad faith, not fraud. Essentially, it's the same thing. We said, Judge Garth wrote it, that consequently, that any review of the district court's determination must proceed in two steps. First, it must determine whether the plaintiff's action was brought in bad faith and substitute here fraud. If it wasn't brought in bad faith, that's the end of it. If, however, there's a finding of bad faith, then the district court must proceed to exercise its discretion either in favor of or against the successful party who seeks fees, but there must be some balancing and evaluation. You don't have to impose the fees, but there's got to be some evaluation so that that information can again be reviewed on appeal. So something on the record that shows why you're not assessing fees, and if you are assessing fees, something that lets the applied court determine the accuracy and the fairness of the amount. Yes, Your Honor. That was never done here. That was not done here. Again, because the court stopped first, and again, I haven't gotten to the second point, which is the court stopped at two places. One just said $75,000. Sorry. That would be as if we have filed a motion to compel. We said we want to compel the other party to answer 60 requests for production of documents, and the court was simply to say, without looking at the merit of any of those requests, simply say, well, 60 is too many. I'm denying your motion to compel. Procedurally, due process, you have to look at it, and the court didn't do that. The second area that the court said was that it really wouldn't matter because it wasn't material. We would have granted summary judgment anyway, but that in and of itself was error, because if you look back, and what the court does is it makes some statements about its summary judgment opinion in the sanctions order, but if it looks back at the actual basis for denying summary judgment, it all comes down to one simple element, which was the number of these calls, and what the court says in its denying summary judgment was it was based on the recollection of the plaintiffs who had physically in their testimony taken a telephone, looked through the caller ID, recorded both dates and times to identify specifically it was this defendant that was calling, while they had lost the call log. Nevertheless, the recollection of those calls and that made their way into the answers to interrogatories was sufficient to create the genuine issue of material fact. Wasn't there some suggestion that the loss of the call log or relying upon memory was litigation convenience or something like that? That was the failure to even try and get phone records to corroborate this. What we go back to is what is the fraud? The fraud in this case is that there was no phone log. The fraud was that they never looked at their caller ID. Those times and dates were never there. In fact, what the court found was the plaintiff looked at the defendant's records that it produced in discovery to then go through and comb through to then regurgitate that information and to suggest that stuff. Just looking at the number of calls that come from your client's own phone logs, would that have been sufficient to give rise to a cause of action under the statute? If it would, why wouldn't it have been? Because the testimony about the—they testified that there was more than the five calls that were made. The first complaint attributed 85 calls to your client, right? Well, that's the complaint. Yeah, it was suggested once or twice a day. And they testified to this. Their deposition, they testified. We had calls multiple times a day, almost every day. If you would count up the days between the times that they were getting these calls, it was 85. But the point—we're not suggesting that the plaintiff was not getting telephone calls. What the plaintiff's obligation is is to identify this defendant making those calls versus getting collection calls from a completely different defendant. Hold on. If, in fact, there was record evidence from which the jury could conclude that your client was making calls to the plaintiff, isn't that enough that the district judge could not have granted summary judgment so he had to go to trial and that's the basis by which he said there was no prejudice here? No, because the plaintiff had no evidence that—the plaintiff had no evidence that the calls—that the number of calls, the frequency and persistency of these calls were coming from this defendant. For a terrifically precise answer to the question my colleague asked was, did your client make calls? Yes. So whether the plaintiff had evidence or not, we now know they made calls. You're saying those weren't enough to go to trial? Correct. That those—they were not enough and they would need something to attack those calls to say that they showed the intent to annoy, harass, or abuse. The physical calling and the timeframe of these calls— What was the number from your lines? Five calls? Five. For what period of time? The five calls took place beginning on March 11, 2013 and ended April 2, 2013. So over 30—a little short of a 30-day period of time, there were five telephone calls. And so in order to get to this summary judgment hurdle, the plaintiff had to come up with something that would prove that the calls were harassing, that they were with the intent to annoy, harass, or abuse. And so what they did was to try and say that there were these multitude of calls. And what they did was to say, we knew that there was a multitude of calls, but what I did was create a call log and I did that by physically looking at the caller ID, writing down—because I could tell the number, I knew the number— and to take that number, put down the date, the time, and that number, and I knew that every time I looked at the caller ID, even if I didn't write it down, I knew it was the same number. But it was all fabricated. So if that evidence didn't exist, then there wouldn't have been a reason to grant summary judgment because there would have been zero evidence that it was our client who called any other time but the five times. And I refer—an interesting thing that we put in our summary judgment motion, which we recited here, was the Supreme Court, in the case of Scott v. Harris, that talked about when opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury can believe it, the court should not adopt that version of the facts for purpose of ruling on a motion for summary judgment. The pure recollection in and of itself—you don't need to get to that if I understand your argument correctly. If we do reconstructive surgery on the record and carve out the lies, you're saying as a matter of law Judge Mariani would have concluded, I would have granted summary judgment, the case would have ended then, and at least everything after that was prejudicial. Yes, Your Honor. Thank you. Did you reserve time? I can't remember.  Did you reserve time? Yes, I reserved two minutes for rebuttal. Thank you, Your Honor. Okay. Good afternoon, Your Honor. This is the first. Is that a new judge seat? I think this is the first time I've appeared before you. That's about one and a half years ago. You were sitting in that seat. That's right. This is certainly the first for your colleagues. I have not been before Judge Restrepo since he took this bench, and I certainly haven't been before Judge Hornock. Let me start this clock again since we're complicit with the guy. Let me start this clock from zero. Why don't you just excuse me? I've already got nine minutes of his time that I've run up since then. Go ahead. Your Honor, my name is Alan Epstein, and I have the responsibility of representing Irene and Howard Hammond. Well, there's a responsibility, too. How can you have a situation where a client commits fraud, which to my mind goes to the integrity of the very judicial process? Your Honor, let me explain the fraud in some small detail, because that's the way Judge Mariani looked at it. He was annoyed at the sloppiness of the client's representation, and I'm not here to support that. He did say I was sloppy at number two, but in addition to it being sloppy, it was a fraudulent. That was his term. He said it was fraud, not sloppy, but fraud. Your Honor, it was the client who answered the interrogatories, who said that these are the five calls that I heard, and there's no question that those five calls, in fact, six calls occurred, although we took one off the shelf, so to speak, and didn't claim that one. Those calls were made. There's no question. The fraud was that she wrote them down and said, I did this from my own phone log, not from Northland's phone log. Northland's phone log was registered at Central Time. Her phone log would have necessarily been Eastern Standard Time. So the fraud occurred because she testified or supported these answers to interrogatories at the trial. It's also called perjury. It could be, Your Honor, if she had not said, I remember these, I remember the times, and she used the wrong times. It was sloppy. It was awful. It shouldn't have happened. The best that the judge said with regard to the lawyers is they should have recognized it. Again, sloppy. We had a young lawyer who had not tried many cases. She looked at this and didn't handle the case very well. How about from the hello moment when they ask if you know Henry and they say, Henry who? Henry, your son, maybe. That went to, that went to, And the complaint that says we know nobody named Henry. Not counting the guy that lives on the street. Oh, I have a son named Henry. I will tell you that this would not have occurred had I been the attorney. And I can't say that I'm happy about these things. But shouldn't federal trial judges, I mean, don't they get to play the ball where it lies? And if they have a complaint that starts with, I've never known anyone named Henry, and that's inconceivable, I mean, isn't that a really rocky start to federal trial litigation? Shouldn't they have asked who's Henry? It was by the time the judge got to that, it was corrected, Your Honor. And I don't think that they quite said, I never knew anybody by the name of Henry. They called for a Henry. And they didn't go further in explaining that their son was named Henry. But that wasn't the issue. No Henry here, I thought you said. Your Honor, let me explain. I want to try this with you. Listen to our questions and then answer that way. Sure. Didn't they say there's no Henry here? We don't know Henry? They explained at one point that they were calling for Henry and we don't know a Henry in this household. Yes. Was that proper? No, Your Honor. And if the judge thought that these people were engaging in such duplicity that it was required to chastise them for not telling the truth, that should have been done. And that's a pejorious process. But in one sense carried over into the litigations. Complaint was found. You can call it sloppiness, then they come up with this excuse about litigation strategy. Yeah, those weren't essential to the elements of the case that allowed it to go further. But it does something about the integrity of the process. I agree with you, Your Honor. The integrity of the process. I agree with you, Your Honor. And should we as an appellate court with our supervisory powers, slim as they are, sit by, see something like this happening, and just say to the attorney, well, you know, you really need to next time when your client comes to you, ask the names of the kids who live there. We need to do something about this. We need to maintain the integrity of the process. Your Honor, there is no question here about the integrity of the process. If I may, under 1927, under Section 1927, the client, and there's been a hodgepodge of allegations here. See, this is in the gist of neither is there 1927. This is under Rule 54 of the court's authority to basically police the integrity of the process. I understand, and the inherent power of the court goes along with 1927. It has been so held by this court repeatedly. In a 1927 case, the client can't be held responsible, and vice versa in the other allegation being made under the sanctions of the Fair Debt Collection Practices Act, the attorney can't be held responsible. There's been no distinction made there. The only evidence that we have about attorney involvement, Your Honor. Why can't we make the distinction? Mr. Connolly, what's under security for us? Somebody signed off on this complaint, and he had to a word that was brought in to the best of his knowledge and belief. The basis of the complaint, Your Honor, was twofold. That went all along throughout the process. Number one, that the calls were made. Number two, that they were made for the purpose of finding out where Henry was. Number three, they were made in a way that was in violation of the act. Those were the allegations. Whether or not they said, we didn't know about a Henry, whether or not they used the wrong time zones, those were not things that controlled either the bringing of this case, or the number of calls in the supported action under the 1927, I guess, the Fair Debt Collection Practices Act. If he had five calls in a period of five or six weeks, I cannot imagine a lawyer, a conscientious attorney, putting them together into a complaint and suing him for the act. Judge Mariani said in his decision, Your Honor, at page 16, of the summary judgment motion, that those five calls were sufficient to bring it to the attention of the court and to move further in the case. That's a 1682, 75 violation. Yes, Your Honor. He specifically held in his discretion that those five calls over that short period of time were sufficient to hold it in, and sufficient to hold it in as to whether or not, whether or not they continued the calls after Howard Hamburger said to stop. Those were the two reasons it went to trial. There were many others that went to trial. If Judge Mariani had made every single finding exactly as he made them in his opinion, and said, I conclude, therefore, that there's sanctionable conduct, and I am sanctioning by the award of X payable by Y, would he have committed error? I believe so, Your Honor. However, he didn't do that. What would be the error? In response to Judge Hornex, what would be the error? Because there has to be a steady disregard. In order to find a sanction under the inherent powers of the court, what LaSalle says is that you have to have a serious and steady disregard and agree to its action. He finds fraud. He found that using the Central Crime Zone notations instead of Eastern Crime Zone demonstrated that she was using something that she didn't say that she was using. Can I just rephrase what you just said in response to his question? His question was, he found fraud. Yes. You just responded, your response is tantamount to saying, yes, Judge Percival, he found fraud. I did, I just said that. Okay. He found fraud in the fact that she represented she took this from her phone log and, in fact, it seems apparent that she took them from the records produced. Mrs. Hamburger took them from that phone log. And under that process, she only could be held responsible in terms of a studied and a serious disregard. That small portion of her testimony was the only thing that Judge Mariani found wrong. That's the essence of her case. How can you say it's a small essence of her case? It wasn't the essence of the case. The five phone calls were made. There's nobody questioning that there were five phone calls made. Nobody ever questioned that. They were blogged and they were dedicated, and there was, in fact, a statement in those records that Mr. Hamburger did tell the person to stop. There's no question about that. What was the fraud was is she represented that this was from her phone logs and not from their phone logs. But that was fraud, and that was wrong. There's more to this case than that, though. It's a whole Henry Hoon concept. But the judge was there, Your Honor. He used his discretion to look at all the records. That's why we have appeals courts. Take a look at what the judge did, what the judge saw. And again, I come back to the Fairtrack case, and I don't know how what happened here, which is nothing, is consistent with what we said should happen when the court finds these under Fairtrack, bad faith. Judge Mariani went on to look at the entire record. He looked at the whole record and record as a whole in terms of when it started and when it finished. And what he said was, in the court's opinion, at page 11, which is A30, it does not appear that the Hamburgers brought this case for any other reason than satisfying their perceived grievance. He also went on to say at page 12, A31, there is no evidence that plaintiff's attorneys multiplied the proceedings through any sort of delaying tactics. And while he's decrying the poor job that counts have been throughout, he specifically said that in 1927, in the internally inherent powers of the court, does not apply to a situation where sanctions are sought for failure to take adequate inquiry into facts and law. What he found about the attorneys was that the attorneys should have looked at that line that she placed before the court and said, this is central time, this is not eastern time, and therefore it couldn't have happened from your records. They didn't do a very good job. Do you represent the Hamburgers or the attorneys? He said that about the attorneys. Who do you represent, the lawyers or the underlying plaintiffs? I represent all those individuals who are, for various reasons,  Okay. In 1927, we're assuming that the parties, the individual plaintiffs would have to pay a sanction, but the attorneys wouldn't have to pay. And it wouldn't have to be that the Hamburgers would pay, although maybe given where they did hear, that would not be fair. I'm sorry, Your Honor. What the lawyers did wrong was not discover that Mrs. Hamburg used central hours instead of eastern standard hours. They didn't discover the thing, but they didn't know why. Remember, what you're saying, Mr. Epstein, is they didn't discover the fingerprints of the lie. Because there's a lie here. The central and eastern time are simply the DNA. So why would it have been reversible error if Judge Mariani made exactly the same findings he made, but nonetheless said, I conclude that some sanction is necessary and therefore a ward is followed? Because there has to be a serious and steady disregard. It can't be because you were sloppy. It can't be because you're a bad lawyer. It can't be because you just haven't done your job. It can't be because you're looking up and figuring out what your client has said. But who do you think you're trying to fraud? How about if you lied? How about if you lied? The Hamburgers and the lawyers lied when they claimed the times listed in interrogatory aid, et cetera. It strongly suggests the lawyers, the plaintiff's attorneys, knowingly submitted false evidence to the court. How much more egregious does it have to be to knowingly submitting false evidence to the court? Well, I don't think that the judge went on to say that the lawyers did that, that what the lawyers did was miss the fact that Mrs. Hamburg lied. It also strongly suggests, take a look at page 14. It also strongly suggests that the plaintiff's attorneys knowingly submitted false evidence to the court. That's what he says. I hear you, Your Honor. But the rest of his decision and the rest of his record demonstrate through the affidavits given by the Hamburgers that she was the one that condoned putting them into the interrogatory. And at the trial, she referred to the interrogatory. That was it. They weren't relying on that. I think the jury came back very solidly and said, five calls is just not sufficient. They weren't doing the wrong thing. And after Mr. Hamburg told them to stop, they actually stopped, albeit that there may have been one other call after that. It was a weak case at very, very best. And it was compounded by the fact that Mrs. Hamburg made representations to the court that were false. And she should have known that they were false, that she wasn't just getting that from her own phone log, although she may have had a phone log at one time. Nobody's demonstrated otherwise. The legal principle that says the right outcome in those circumstances is the federal court should give that a pass. What's the legal principle that drives that result? Because that's the result you're asking for. No, sir. I'm not asking for a rule of law that says that under those circumstances. I'm assuming there's an existing rule of law. Apply it here. What's the existing rule of law that you say on these facts, what the findings judge Restrepo said, the federal court should give that lie a pass? Because of page 16, Your Honor, which is at 831, the judge, after going through all of these things very carefully and very carefully eliciting the law, although he didn't make a distinction as to who was responsible under what laws, stated, we are faced with clearly established fraud that had no actual effect on the proceedings and was very limited in scope. You made a decision. You made a decision. What if we disagree that that had no effect on the proceedings? I don't know how fraud on a judicial proceeding can have no effect on the proceedings. We just allow it to happen. It's giving them a pass. It's just what I said. I don't agree with you, Your Honor. With all due respect, what he is saying is that she said something that was peripheral to the disposition of the case. I understand all that. In terms of the element to the cause of action and all that, it was not outcome determinative. My point, though, is a much more esoteric one, and that is just the quality of the process involved. It should be, as opposed to just kind of turn around, as your attorney said, give that a pass, put as much crap in the well as you want to, according to the expression, as long as the woman drinks from it, there's no problem. You're extenuating a very small circumstance into a larger one. I think that if there had been a process where there was a multiplication of the proceedings, if at the trial, and what he's talking about is at the trial. He wasn't talking about the interrogatory having any effect on summary judgment. He specifically said it did not. In his summary judgment motion, I mean, in his opinion, he said, I specifically held on summary judgment that this had no effect on us going forward because she was testifying that she recalled there being five calls, and she was correct in that regard. We disagree, I guess. Respond to this for me. You just read the sentence, read it in the microscope, and the judge follows that with, we deplore counsel's conduct for allowing such obviously untrue evidence to be presented to us. But at the same time, defendant's demand for sanctions in the form of fees in excess of $75,000 is out of proportion. Well, he said that we remain convinced that the counsel's poor performance does not justify substantial sanctions that defendant seeks. I don't think it demands any sanction because the sanction has to be for either multiplying the proceedings. If the judge wanted to sanction the lawyers for improper conduct in being sloppy, I thought that would be before this court. You like sloppy, I like flawed. Use my word. If the judge wanted to sanction the lawyers for flawed, then finish that sentence. For engaging in flawed conduct during the course of the judicial proceedings, officers of the court, finish that sentence. The fraud was on the part of Mrs. Hanberg, not the attorneys. The attorneys didn't make that representation. They allowed Mrs. Hanberg to make that representation. The judge is there. They allowed her. It's not as though they didn't know what was happening from what Mr. Moraney said. They stood by and they allowed it to happen. He says the attorneys lied. There's no evidence whatsoever on this record to say that these attorneys realized that Mrs. Hanberg was not lying. Judge does say the Hanbergs and their attorneys lied. So he's attributing lies to both parties at page 14 of his opinion. So he's concluding they both lied to me. You're taking that as one part of this context and the rest of it because he exonerates them from having complicity in actually engaging the court in a lie or representing to the court that there was a lie. They never once made the argumentation that these interrogatories were something that they had studied and they let them slide. He said they were exonerated when he says we're faced with clearly established fraud. He does say that. Yeah. He does say clearly established fraud, but he doesn't put that onto the attorneys. The attorneys were responsible during this process of not catching that the fact that this client was saying that she prepared those dates from her records as opposed to Northland's records. That's the only thing that was wrong here. So the attorneys threw the Hanbergs under the bus? No, the attorneys didn't do anything in that regard. They only became aware of this action based upon that when they brought up the request for fees. And they never differentiated in the request for fees that there was a multiplication of the actual proceedings. They never suggested that it extended the proceedings in any way, yet they asked for $75,000 without showing any record. But that may be the only problem, the amount, which maybe the district court has to go back and tell us how he got that amount. Well, I don't agree with you, Your Honor. I don't think that there was fraud that meets the standard of any of the three instances where they're claiming. And, in fact, the cases are very, very clear that the behavior has to arise directly from the actions of the attorney. And I point you to the SAL at page 288. Well, no, what I read here from Perichek. Perichek. Perichek is a case, Your Honor, where the judge was opining about something where there was a grievous fraud or a grievous action taken by the attorneys. Here, the attorneys merely allowed a client to testify in a way that this judge thought was improper, and therefore, it was fraudulent. So did they call this aborting perjury? They merely allowed the clients to testify in a way. Another word for that is aborting perjury. Your Honor, sometimes attorneys don't catch things that the clients say. Sometimes attorneys don't study their cases that way. What's at the guts of the case, Mr. Epstein? This wasn't, was the Volkswagen a Jetta or a Passat. This was the guts of the case. How many calls came, and the more calls, the better the case looks for the plaintiff. So this is at the guts of the case, and a lawyer standing up in court in a courtroom that's listening to false testimony come in has an obligation to cause the record to be corrected. This isn't a criminal trial. It's a civil trial. Your Honor, I disagree from the standpoint that the attorney never said there were more than five calls. But the client did. Right? Didn't the client? No. In the trial, the client stuck to those calls that were made and said, I remember there being other calls, but couldn't say as to whether or not they came from Northman or other carriers. There was a complaint there were more than five calls, wasn't there? She believed at that time when she made the complaint that all the calls that they were receiving about their son were from Northman. They didn't make a distinction when confronted with it. They honestly said they could not say they were all from Northman, and the judge allowed this matter to go to the trial on the basis of those five calls and those five calls only. So what the attorneys did wrong was to not discover that they had put down the times in central time and that, in fact, therefore, this wasn't from her lot but was from Northman's lot. I think we're in the middle of the circle. I think you did these some time. I'm sorry to cut you, but we're circling the wagon here. Let me just with one last thought. This is a matter that is within the discretion of Judge Mariani. Judge Mariani looked at the entire record. There's been no suggestion by Northman that he engaged in a wrong application of the law. There's been no suggestion. The purchase may have engaged in a wrong application of the law, but this is the proverbial, Judge, I'll be brief. After the red light comes on and half an hour later the judge will let us in. Just one more thought, Judge. That was it, and all I'm asking is not my opinion that came to you. It is not Northman's opinion at cancer, and in all due respect, it really doesn't amount to your opinions as to whether or not you would have done something differently if you were sitting on this case. Judge Mariani made a steady decision, and that decision should be upheld as being within his discretion. Thank you. Thank you, Your Honors. I just have a couple quick points. First, I wanted to say that. It is a couple of quick points. It is only a couple of quick points. What are your senses at the winning end? Stand up and say, I just have a couple of quick points. I want to dispel the notion that the plaintiff's attorneys weren't actively engaged in this fraud. First, I go to the opinion of the court. At 834, the appendix, page 14, the opinion, the evidence strongly suggests that the hamburgers and their attorneys lied when they claimed the times listed in the interrogatory were transcriptions from the caller ID. Secondly, the court agrees with the defendant, due to the complicated nature of Northland's call records, that plaintiff's attorneys would likely have had to explain to the hamburgers what the documents actually said, that in order to get the hamburgers to say that Northland called them at the exact times listed in the record, their attorneys would have had to, at some point, point out the times that the attorneys believed, erroneously, that the record showed that Northland called them. And to that end, this is what the court did. Here are the call records. They are in the appendix, 534 to 552. I asked the court to look at these records. If the court can tell me, on its own, where these calls are, without counsel telling you where the calls actually appear, I would be surprised, because these are extremely complicated records that only people who are familiar with the area, there is absolutely no way that Mr. or Mrs. Hamburger, reviewing this 20-page document, figured out where the calls were. And here's the additional fact. This isn't just simply, they put the wrong thing because it was in Eastern time and it was in Central time. This wasn't a mistake of an hour. In fact, what the testimony in this case was, and what the court recognized and why it was complicated, was the calls were done by a third-party vendor. So what happened was Northland would download, at the end of the day, the record of all the tens of thousands of calls that this third-party vendor made on behalf of all of its clients. So you would get the call log, for example, and show the download occurred at 523. That's when the download occurred. But if you actually read the notes, you would see that the call didn't occur at 523. The call itself occurred at 2 o'clock. And then if you took that 2 o'clock time and translated the hour, then you would have been close. But it wasn't even that. It was clear that they went in and they looked where the call was and when the downloads occurred. That's why there was the error, because on one day, Northland erroneously downloaded the same batch twice. And so the plaintiff's lawyers picked up the two calls, because the plaintiff surely can't translate this document, and they gave them this information. So the plaintiffs were intrinsically involved in this fraud. The plaintiff's attorneys, because the plaintiff's the least sophisticated consumer, as this Court has indicated in numerous FDCPA opinions, is in no capacity to read these notes. Didn't Judge Mariani very exquisitely say, all of this happened, all of these people did it, and it didn't affect my decision-making in any way? I would have come out the same way on all of my legal rulings about summary judgment and proceeding with the case. The Court said that yesterday. Judge Mariani said that in his sanctions motion, but if you go back and read his summary judgment opinion, you will see that his reliance in the summary judgment opinion of why these calls went were all predicated on the foundation that the recollection of the plaintiff's, why there were more calls, was based on the fact that she had this call log that she'd lost. And if you never had the call log, then you don't have a recollection that is supported, that her testimony about looking at a caller ID, writing down the times, that if all of that was false, you never would have gotten a summary judgment denied, because all of the bases upon which Judge Mariani relied in his summary judgment opinion would never have existed from which summary judgment could have been denied. And secondly, as I close, simply entering, there is this concept, as the Court has pointed out, of the sanctity of the judicial proceedings, and for the Court to manage its own proceedings before it. For the nature and character of this fraud to have been engaged in to prolong this process warrants a sanction. So even if there wasn't a direct causal link to say that, the fact that it occurred and it engaged itself in its proceedings is reason enough to engage in a sanction simply beyond an opinion that somebody did something wrong. And for those reasons, the defendant respectfully requests that the conclusion of the trial court that no sanctions be entered be reversed, and that it be remanded back to the trial court to hold a hearing as to the nature and amount of the sanctions that should be entered. Thank you.